**F I L E D**
CLERK, U.S. DISTRICT COURT

11/13/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KM_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 2:25-CR-00929-JWH |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1014:  Loan Fraud; 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| CODY HOLMES, | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE AND TWO

[18 U.S.C. § 1341]

A.    INTRODUCTORY ALLEGATIONS

1.    At times relevant to this Indictment:

a.    Defendant CODY HOLMES was a resident of Los Angeles County, within the Central District of California.

b.    Defendant HOLMES was the Chief Financial Officer ("CFO") of Shangri-La Industries, LLC ("SLI"), a company doing business in this district.

c.    Defendant HOLMES also acted as CFO for other companies he, SLI, and others operated, including Shangri-La Development LLC,

Shangri-La Construction LP, Shangri-La Capital, LLC, and 12 Conejo, LP (collectively, "the Shangri-La Enterprise").  Among other powers, defendant HOLMES was a signatory on accounts held in the names of Shangri-La Enterprise entities.

d.    The California Department of Housing and Community Development ("HCD") was a California state agency that was intended to help provide affordable housing, including to Californians experiencing homelessness or at risk of experiencing homelessness.

e.    Homekey was a program through which HCD provided grants to local public entities and their public and private partner applicants to acquire, convert, and rehabilitate motels for permanent or interim homeless housing, and to operate the resulting housing projects and provide supportive service to residents.  Some of the Homekey grant money was provided by the federal government.

f.    The City of Thousand Oaks ("Thousand Oaks") was a local public entity located in Ventura County, within the Central District of California.

g.    On or about January 27, 2022, SLI, Thousand Oaks, and a nonprofit company ("Company A") jointly applied to HCD for Homekey grant money to acquire, convert, and rehabilitate a motel located at 12 Conejo Boulevard, Thousand Oaks, California into homeless housing, and to operate the resulting project (the "12 Conejo Project").

h.    In connection with SLI's Homekey applications to HCD (jointly with Company A and local California public entities) to acquire, convert, rehabilitate and operate four homeless housing projects, between 2020 and April 2022, SLI and the Shangri-La Enterprise had received, directly or indirectly through escrow companies, more than $43.9 million in Homekey grant money from HCD.

2

i.   In addition, by April 27, 2022, SLI had jointly applied with numerous additional California local public entities for hundreds of millions of dollars more in Homekey grant money to acquire, build, rehabilitate, and operate 11 additional Homekey homeless housing projects, including the 12 Conejo Project.

j.   Private Mortgage Fund, LLC ("PMF") was a mortgage lending business within the meaning of Title 18, United States Code, Section 20, a private mortgage company, and an organization which financed debts secured by interests in real estate and whose activities affected interstate commerce, and was located in Los Angeles County, within the Central District of California.

B.   THE SCHEME TO DEFRAUD

2.   Beginning no later than December 2021, and continuing through at least on or about December 12, 2023, in Los Angeles and Ventura Counties, within the Central District of California, and elsewhere, defendant HOLMES, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud HCD as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises.

3.   The scheme to defraud operated, in substance, as follows:

a.   Defendant HOLMES and others, on behalf of SLI, co-applied with Company A and several local public entities for 15 Homekey grants purportedly to acquire, convert, rehabilitate, and operate housing for homeless persons.

b.   In many instances, SLI's applications, and supporting documents provided by defendant HOLMES and SLI, pledged that one or more Shangri-La Enterprise entities would contribute millions of

dollars in funds to a project, separate and apart from the Homekey grant money.

c.    On or about May 4, 2022, to obtain additional Homekey grant money from HCD, and in response to HCD's demand for additional information relating to SLI's financial capacity to support the financial commitments made in connection with each of the 15 Homekey projects applied for, including for the 12 Conejo Project (the "Capacity Analysis Request"), defendant HOLMES and SLI responded in writing to the Capacity Analysis Request, and made and submitted the following materially false and fraudulent representations concerning SLI and the Shangri-La Enterprise's financial resources and condition:

i.    that Shangri-La Capital, LLC, and Shangri-La Development, LLC committed a combined $163,212,005.00 in cash in connection with the projects;

ii.    that "Shangri-La Development LLC" had an account at Bank of America with an ending balance of approximately $59,283,411.81 on March 31, 2022, as supported by a purported bank statement; and

iii.    that "Shangri-La Capital LLC" had an account at Bank of America with an ending balance of approximately $103,928,594.05 on March 31, 2022, as supported by a purported bank statement.

d.    In truth and in fact, as defendant HOLMES then knew, Shangri-La Capital, LLC, and Shangri-La Development, LLC, did not then have $163,212,005.00 in cash; the bank statements submitted with SLI's response to HCD were false; and the claimed bank accounts did

4

not exist.  Moreover, the Shangri-La Enterprise entities had only a fraction of the claimed amount of cash on hand on March 31, 2022.

e.    On or about June 7, 2022, to obtain additional Homekey grant money for SLI from HCD, including for the 12 Conejo Project, defendant HOLMES supplemented SLI's above response to the Capacity Analysis Request by making and submitting by email to HCD employees involved with the Capacity Analysis Request the following additional materially false and fraudulent documents (the "emailed bank statements") concerning SLI and the Shangri-La Enterprise's financial condition:

i.    a purported bank statement for an account at Ventura County Credit Union in the name of "Shangri-La Capital LLC", claiming that the account had an ending balance of approximately $75,221,579.19 on May 31, 2022.

ii.    a purported bank statement for an account at Bank of America in the name of "Shangri-La Capital LLC," claiming that the account had an ending balance of approximately $101,900,922.00 on May 31, 2022.

iii. a purported bank statement for an account at BMO Harris Bank in the name of SLI, claiming that the account had an ending balance of approximately $16,010,597.33 on May 31, 2022.

f.    In truth and in fact, and as defendant HOLMES then knew, the emailed bank statements were false, and the claimed accounts did not exist.  The Shangri-La Enterprise entities, moreover, collectively had only a fraction of the claimed amount of cash on hand on May 31, 2022.

g.    On or about June 28, 2022, HCD advised defendant HOLMES, SLI, Thousand Oaks, and Company A that HCD had awarded

approximately $26.74 million in Homekey Round 2 grant funds for the 12 Conejo Project.  In October 2022, approximately $25.9 million (the "12 Conejo Grant Money") was paid to SLI in Los Angeles to acquire, convert, rehabilitate, and operate the 12 Conejo Project.

h.    Following HCD's award and payment of Homekey grant funds to acquire, convert, rehabilitate, and operate the 12 Conejo Project (the "12 Conejo Grant Money"), defendant HOLMES and SLI caused the 12 Conejo Grant Money to be deposited to a Shangri-La Enterprise account on which defendant HOLMES was a signatory. Thereafter, at least some of the 12 Conejo Grant Money was used to pay balances on American Express credit card accounts in the name of defendant HOLMES's associate.  In general, the kinds of purchases which created the card balances were unrelated to Shangri-La Enterprise operations, but were instead purchases at well-known luxury retailers.

4.    SLI and defendant HOLMES did not finish the conversion and rehabilitation of the 12 Conejo Project, and never operated the 12 Conejo Project, and HCD has not recovered the $25.9 million it paid for the 12 Conejo Project.

C.    USE OF THE MAILS

5.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant HOLMES, for the purpose of executing the above-described scheme to defraud, caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service according to the directions thereon:

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| ONE | 10/27/2022 | California Warrant number 62848753 in the amount of $6,000,000, payable to SLI at an address in Los Angeles, California |
| TWO | 10/28/2022 | California Warrant number 62873197 in the amount of $19,974,713, payable to SLI at an address in Los Angeles, California |

COUNT THREE

[18 U.S.C. § 1014]

6.    The Grand Jury realleges paragraphs 1, 3, and 4 of this Indictment here.

7.    On or about September 24, 2022, in Los Angeles County, within the Central District of California, defendant HOLMES knowingly made a false statement for the purpose of influencing the action of a financial institution, namely, PMF, in connection with an application and loan to be secured by the 12 Conejo Project.  Specifically, defendant HOLMES submitted a Goldman Sachs brokerage account statement claiming that on August 31, 2022, defendant HOLMES held cash, deposits, and money market funds in an account ending 704-7 valued at approximately $3,751,292.74, when, in truth and in fact, and as defendant HOLMES then knew, the balance in the account on August 31, 2022, was approximately $29,799.52.

8

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

8.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant CODY HOLMES's conviction of the offenses set forth in any of Counts One or Two of this Indictment.

9.   If so convicted, defendant HOLMES shall forfeit to the United States of America the following property:

(a)  all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses;

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

10.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant HOLMES, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

11.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), in the event of defendant CODY HOLMES's conviction of the offenses set forth in Count Three of this Indictment.

12.    Defendant HOLMES, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

13.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished

11

in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Chief, Major Frauds Section

MONICA E. TAIT
NISHA CHANDRAN
Assistant United States Attorneys
Major Frauds Section

SARAH E. SPIELBERGER
Assistant United States Attorney
Asset Forfeiture & Recovery
Section

12